IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2005

## STATE OF TENNESSEE v. LEONARD DALE KINCER

**Direct Appeal from the Circuit Court for Van Buren County**
**No. 1657-F     Larry B. Stanley, Judge**

_____

**No. M2004-01403-CCA-R3-CD - Filed May 11, 2005**

_____

A Van Buren County Jury found the Defendant, Leonard Dale Kincer, guilty of facilitation of the manufacture of one hundred grams or more of a substance containing methamphetamine. The trial court sentenced the Defendant to four years. On appeal, the Defendant contends that: (1) the evidence is insufficient to support his conviction; (2) the trial court erred in its instruction to the jury on facilitation; (3) the State committed prosecutorial misconduct by introducing prejudicial information during its closing argument; and (4) the statute under which the Defendant was convicted is unconstitutional. After thoroughly reviewing the record and the applicable authorities, we affirm the Defendant's conviction and sentence, and remand for entry of an amended judgment in Count one.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

J. Al Johnson, Spencer, Tennessee (on appeal), and Billy K. Tollison, III, McMinnville, Tennessee (at trial), for the Appellant, Leonard Dale Kincer.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; C. Dale Potter, District Attorney General; and Larry G. Bryant, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

The Defendant was indicted for the manufacture of one hundred grams or more of a substance containing methamphetamine, and a Van Buren County Jury convicted him of the lesser-included offense of facilitation of the manufacture of one hundred grams or more of a substance containing methamphetamine. On May 21, 2003, the trial court sentenced the Defendant as a Range I offender to four years.

The following evidence was presented at the Defendant's trial: Kevin Murphy, a deputy with the Warren County Sheriff's Department, testified that, on February 15, 2000, he served an attachment on the Defendant, and the address on the warrant stated 494-A, Barlow Road, Tennessee. He testified that, pursuant to the warrant, the Defendant was placed under arrest and transported to jail where the Defendant filled out a booking sheet and listed his address as 494 Barlow Road in Bone Cave. Deputy Murphy testified that he went again to 494 Barlow Road on March 2, 2000, to execute another warrant for the Defendant, and he noticed the Defendant's truck on the property. He said that there was one house at the location, and he did not notice any other structures on the property. Deputy Murphy testified that he returned to the location the following day and noticed that the Defendant's truck was on the property, but was parked in a different position than the day before. The deputy said that he called a Van Buren County Deputy to meet him, and, as they approached the back door of the house, there was a strong smell of methamphetamine from outside the house. After being given permission to enter the residence, the deputy looked for, but did not find the Defendant. He testified that he found items associated with the manufacture of methamphetamine in the residence.

On cross-examination, Deputy Murphy agreed that the Defendant's truck was not parked directly in front of the residence, but was parked to the right of the house. He testified that he knew that the Defendant was driving the truck, but he did not know who owned the truck. On redirect-examination, Deputy Murphy testified that he did not run the registration on the truck because he knew, from his previous dealings with the Defendant, that the Defendant drove the truck.

John Haley, a deputy with the Van Buren County Sheriff's Department, testified that, on March 3, 2000, he received a call to assist in the execution of a warrant at 494 Barlow Road. He testified that, at 494 Barlow Road, there is one structure. Deputy Haley testified that he and the two other deputies approached the residence, and the front door was covered by boards. He said that they then went to the back door and knocked, and Wilburn Ferguson came to the door. Deputy Haley testified that he told Ferguson that they were looking for the Defendant, and Ferguson gave them permission to enter the house to do so. He said that the Defendant was not there, but he found items associated with the manufacture of methamphetamine. Deputy Haley testified that he removed Ferguson from the residence, and he called the District Attorney's office. Deputy Haley testified that he was familiar with the Defendant, and he knew that the Defendant always gave his address as 494 Barlow Road.

On cross-examination, Deputy Haley testified that there is a store on the left at the corner of the entrance to Barlow Road, but he did not know the address. He testified that he did not find any personal items associated with the Defendant during the search of the house.

Mike Vann, an investigator with the District Attorney General's office, testified that he has been trained to investigate methamphetamine laboratories and that, on March 3, 2000, he received a call from the Van Buren County Sheriff's Office about a possible methamphetamine lab. He said that, based on that call, he went to 494 Barlow Road, and he executed a search warrant. He testified that he found numerous items, and he began to take photographs of the entire area to show where

the items were located in the room. Officer Vann testified that these items were found scattered over the property, inside and outside the residence, and in vehicles. The officer said that he began to pull items that were in plain view, and he took individual photographs, many of which he identified in court. He said that there was one mailbox located on the property, and this house was the only one on or near the property.

Officer Vann testified that he removed the following items from inside or around the residence, the backyard, and the truck located on the property: a garbage bag containing a large quantity of matchbooks; a small kitchen pan with matchbook striking pads soaking in it; a drip-type coffee pot with filters and paper towels that contained red phosphorous; two propane cylinders; a quart Mason jar with a two-layered liquid; a box of Sudafed; a jar containing a pink liquid and pink tablets; a one gallon container of acetone; a small dish with several plastic baggies that contained red phosphorous; a Pyrex cooking dish with a pure pseudoephedrine powder in the bottom; a larger cooking dish with red phosphorous residue; a turkey baster; a small jar that had a two-layered liquid; aluminum foil and tubing; a gallon container of muriatic acid; assorted glass jars with residue inside; a small black pouch that contained two small jars of iodine crystals; various assorted jars; plastic jugs; a metal can of acetone; a camp stove; a large quantity of camp fuel; a bucket of Red Devil lye; a hydrogen chloride gas generator; four bottles of heat gas treatment; two funnels; some tubing; coffee filters; a pitcher with matchbook striker pads soaking in the bottom; a bottle of B-12; a one-gallon jar with a three-layered liquid that was about three-quarters full; a clear jar with alcohol; a gas mask; a five-gallon bucket with several feet of different sized tubing attached to bottle ends; a condenser; a spaghetti jar that contained a brown liquid; a bottle of heat gas treatment; a glass bowl with a funnel and red phosphorous residue; and two Mason-type jars with multi-layered liquids. Officer Vann stated that all of these items were commonly used during the manufacture of methamphetamine.

Officer Vann testified that there was "[n]o doubt in [his] mind" that this was a methamphetamine lab, and he said that everything that is needed to manufacture methamphetamine was present. Officer Vann stated that the following items were specifically found in the truck on the property: the bottle of heat gas treatment; a glass bowl with a funnel and red phosphorous residue; two jars with multi-layered liquids. He said that he only sent one of the jars to the laboratory for testing. He testified that, when he obtained the Defendant's driver's license information, it showed that the license was issued in 1998, and the address was 494-C Barlow Road.

The parties stipulated that the laboratory reports were from the Tennessee Bureau of Investigation ("TBI"). Officer Vann testified that four of the containers that he removed from the location were tested for methamphetamine. He said that, first, the TBI tested the one-gallon glass jar with a two-layered liquid, and the results were negative. He said that, second, the TBI tested the one-gallon plastic container with a two-layered liquid, and the results were positive for methamphetamine. In order to determine how many grams of methamphetamine existed in the full container, Officer Vann explained that the laboratory sample was 17.2 grams out of an approximately two ounce tube. He said that the actual container, however, was about two-thirds full, or approximately forty ounces. Officer Vann estimated that, therefore, the container clearly

contained in excess of one hundred grams.  He stated that, third, the TBI tested a quart jar with a multi-layered liquid, and it was positive for methamphetamine.  In order to determine how many grams of methamphetamine existed in the full container, Officer Vann explained that the laboratory sample was 9.6 grams out of an approximately 10 ounce tube.  He said that the actual container was about one-third full, and he estimated that the actual container contained about 97 grams.  Finally, Officer Vann testified that the TBI tested the small spaghetti container, and it tested positive for methamphetamine.  He stated, and the lab report confirmed, that the amount was 28.5 grams.

On cross-examination, Officer Vann said that, at the time he executed the search warrant, he believed that it was the Defendant's residence based on the information he had received.  He said that he did not know whether the Defendant ever owned the residence, and he did not find any of the Defendant's personal items.  He testified that he did not personally observe the Defendant at the residence.  Officer Vann testified that he did not determine who owned the residence during his investigation.  He said that he did not know who owned the vehicle where several items were found.

On redirect-examination, Officer Vann testified that he found some of the items that he described in a Chevrolet truck that was either red or orange.  Further, he said that he specifically remembered that the black container with two jars of iodine and the five-gallon bucket with the tubing were found in the area of the truck.  On re-cross-examination, Officer Vann testified that he did not know who owned the property or which items were found around the area of the truck.

Letha Watts testified that she is the Defendant's fiancé, and she has known him for over seven years.  She said that in March of 2000, the Defendant resided at 118 West End Avenue in McMinnville, and she owned the property in Van Buren County on Barlow Road.  She explained that the address to her property was Route 1, Box 494-C Barlow Road.  Watts stated that 494-A Barlow Road is located at the beginning of the road, and 494-B is the property that adjoins her property.  She said that the Defendant has never resided at 494-B, and she said that the Defendant has never owned any property in that area.  She testified that there is a mailbox in front of her residence that is labeled as 494-C Barlow Road.

On cross-examination, Watts testified that her address was 494-C Barlow Road, but some documents showed that her address was on Cummingsville Road.  She said that both she and the Defendant drove the truck that was at her residence.  She testified that the truck was seized as a result of the Defendant's charge, and she said that she tried to claim ownership over the truck, but she did not appear at a seizure hearing.  On redirect-examination, Watts testified that the tax assessor card that she received stated her name and her address as Route 1, Box 494-C, Bone Cave.  On re-cross-examination, Watts testified that the tax assessor card stated her street as Cummingsville Road, not Barlow Road.

Pam Mooneyham testified that she is the assessor of property for Van Buren County, Tennessee, and she assesses property throughout the county.  She said that Barlow Road is also known as Cummingsville Road.  She said that on March 3, 2000, there was an A, B, and C to Barlow Road.  On cross-examination, Mooneyham testified that she actually goes out to the property, and,

while she knows whose name is on the tax card, she does not know if that person actually lives there. She stated that she did not know whether the Defendant lived on the Barlow Road property.

Based upon this evidence, the jury found the Defendant guilty of the lesser-included offense of facilitation of the manufacture of one hundred grams or more of a substance containing methamphetamine.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to support his conviction; (2) the trial court erred in its instruction to the jury on facilitation; (3) the State committed prosecutorial misconduct by introducing prejudicial information during its closing argument; and (4) the statute under which the Defendant was convicted is unconstitutional.

## A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to sustain his conviction for facilitation to manufacture one hundred grams or more of a substance containing methamphetamine. Specifically, the Defendant asserts that the State failed to identify any particular person who intended to commit the stated felony, and there is no evidence that the Defendant furnished assistance. He also contends that, because no fingerprint evidence was taken from the confiscated items, there is no evidence to link the Defendant to that evidence. Further, he argues that the State did not scientifically determine the amount of methamphetamine.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121 S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears

the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A conviction may be based entirely on circumstantial evidence where the facts are "'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone.'" State v. Reid, 91 S.W.3d 247, 277 (quoting State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993)). The jury decides the weight to be given to circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (1958) (citations omitted). While single facts, considered alone, may count for little weight, when all of the facts and circumstances are taken together, they can point the finger of guilt at the defendant beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Further, "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable, 203 Tenn. 440, 313 S.W.2d at 457; see also State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

Tennessee Code Annotated section 39-17-417(a)(1) (2003) prohibits the manufacture of a controlled substance, such as methamphetamine. See also Tenn. Code Ann. § 39-17-408(d)(2) (2003). Under Tennessee Code Annotated section 39-17-417(i)(10) (2003), manufacture of methamphetamine is a Class B felony when there is "[o]ne hundred (100) grams or more of any substance containing . . . methamphetamine." Further, in Tennessee, "[a] person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility required under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (2003). Finally, "a person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-301(b). Thus, in order to convict the Defendant, the State was required to show: (1) a knowing mental state; (2) that the Defendant furnished substantial assistance; (3) to the manufacture of methamphetamine; (4) the substance contained methamphetamine; and (5) that the weight of the methamphetamine equaled or exceeded one hundred grams.

Considering the evidence in the light most favorable to the State, we conclude that it is sufficient to sustain the Defendant's conviction. The evidence clearly shows element (3), that methamphetamine was being manufactured and element (4), that the substance confiscated at the home was methamphetamine. We also conclude that the evidence was sufficient to prove element (1), that the Defendant acted knowingly. The Defendant listed his address as 494 Barlow Road, and he did not specify A, B, or C to that address. There was only one residence at that location, and there was methamphetamine being manufactured at that location. The evidence presented at trial included numerous items that were discovered at the residence and in the truck that are associated with the manufacture of methamphetamine. The jury certainly could have reasonably concluded that the Defendant could not have been unaware that the manufacture of methamphetamine was occurring

at the residence. Further, the Defendant's truck was located on the property on March 2 and March 3, the day before and the day of the execution of the search warrant in this case. This evidence is sufficient to prove that the Defendant was aware of the nature of the conduct or that the circumstances existed. Similarly, we conclude that the evidence is sufficient to prove element (2), that the Defendant furnished substantial assistance to this crime. The investigator removed a bottle of heat gas treatment, a glass bowl with a funnel and red phosphorous residue, and two jars with multi-layered liquids, one of which tested positive for the presence of methamphetamine, from a truck that the Defendant was known to drive. These materials are used in the production of methamphetamine, and the evidence clearly proved that methamphetamine was being produced at the location where the search warrant was executed. Finally, we conclude that the evidence is sufficient to support element (5), that the weight of the methamphetamine equaled or exceeded one hundred grams. The evidence showed that the material containing methamphetamine that was confiscated from a truck that the Defendant was known to drive totaled ninety-seven grams. Additionally, the police found over one hundred grams of a substance containing methamphetamine in the house. Accordingly, the evidence is sufficient to sustain the Defendant's conviction. This issue is without merit.

## B. Jury Instruction

The Defendant contends that the trial court erred by instructing the jury on the lesser-included offense of facilitation of the manufacture of one hundred grams or more of a substance containing methamphetamine. The question of whether a given offense should be submitted to the jury as a lesser-included offense is a mixed question of law and fact. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is de novo with no presumption of correctness. Id.; see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30.

> In Tennessee, an offense is a lesser-included offense if:
> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
> (1) a different mental state indicating a lesser kind of culpability; and/or
> (2) a less serious harm or risk of harm to the same person, property or public interest; or
> (c) it consists of
> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466-67.

The trial court has a duty to instruct the jury as to a lesser-included offense if: (1) reasonable minds could accept the offense as lesser included; and (2) the evidence is legally sufficient to support a conviction for the lesser-included offense. State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). It is the evidence, and not the theory of the parties, to which we look to determine whether an instruction on a lesser-included offense was warranted. Id. at 188. "In sum, when a reviewing court determines whether a lesser-included offense ought to be charged, the evidence clearly controls. If there is evidence sufficient to support a conviction for a lesser-included offense, we hold that a trial court must charge that offense." State v. Richmond, 90 S.W.3d 648, 662 (Tenn. 2002).

Tennessee Code Annotated section 39-17-417(a)(1) (2003) provides that it is an offense to manufacture a controlled substance, such as methamphetamine. See also Tenn. Code Ann. § 39-17-408(d)(2) (2003). In Tennessee, "[a] person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). The statute applies to those facilitating "criminal conduct of another by knowingly furnishing substantial assistance to the perpetrator of a felony, but who lacks the intent to promote or assist in or benefit from, the felony's commission." Tenn. Code Ann. § 39-11-403 Sentencing Comm. Cmts. Our legislature has adopted comments that expressly note that facilitation is a lesser-included offense of the crime charged. See Tenn. Code Ann. § 39-11-403 Sentencing Comm. Cmts. Therefore, we must determine whether the evidence warranted a facilitation instruction.

We conclude that the trial court properly instructed the jury on facilitation. As previously determined, sufficient evidence existed for a rational jury to convict the Defendant of facilitation of the manufacture of one hundred grams or more of a substance containing methamphetamine. Several items that are associated with the manufacture of methamphetamine were removed from the vehicle that the Defendant was known to use, and one of the jars removed from this vehicle tested positive for methamphetamine. Further, the Defendant listed the property as his address, and his vehicle was seen at the residence. Finally, a rational jury could certainly have concluded that the Defendant provided substantial assistance to this crime by permitting it to occur at his residence and by using and/or permitting the use of the vehicle in which incriminating evidence of methamphetamine manufacturing was discovered. We conclude, therefore, that the trial court properly instructed the jury on the lesser-included offense of facilitation. This issue is without merit.

### C. Prosecutorial Conduct

The Defendant contends that the State's closing argument was improper because it served to inflame the passions and prejudices of the jury, and he asserts that the State misled the jury, during

its closing argument, as to the inferences the jury may draw from the evidence. The Defendant also asserts that the State's repeated references to a methamphetamine problem during voir dire were improper. Finally, the Defendant contends that the State misstated the evidence, although the Defendant concedes that this alleged misstatement alone does not amount to reversible error. The State contends that its statements made during closing argument are not of the type that would inflame the passions of the jury. The State further asserts that the Defendant has waived any objection to the statements made during voir dire, the statements that the Defendant asserts were misstatements about the evidence, and the statements that the Defendant asserts misled the jury during closing argument because the Defendant did not raise a contemporaneous objection to any of these statements at trial. We agree with the State.

With regard to the Defendant's objection to the statements made during jury selection, statements about the evidence made during closing argument, and statements made during closing argument about inferences that the jury may draw, we conclude that the Defendant has waived these issues by his failure to raise contemporaneous objections at trial. Tenn. R. App. P. 36(a); State v. Matthew Kirk McWhorter, No. M2003-01132-CCA-R3-CD, 2004 WL 1936389, at *41 (Tenn. Crim. App., at Nashville, Aug. 30, 2004), *no perm. app. filed*. Appellate relief is generally not available when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." Tenn. R. App. P. 36(a); see State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (holding that waiver applies when the defendant fails to make a contemporaneous objection).

This Court has, in its discretion, from time to time reviewed allegations of prosecutorial misconduct as "plain error" even in the absence of a contemporaneous objection. See, e.g., State v. Marshall, 870 S.W.2d 532 (Tenn. Crim. App. 1993), *overruled on other grounds by* State v. Carter, 988 S.W.2d 145 (Tenn. 1999) (determining in absence of objection that prosecutor's jury argument was not plain error); State v. Bulter, 795 S.W.2d 680 (Tenn. Crim. App. 1990) (considering whether statements of prosecutor were plain error despite lack of objection by defendant); Anglin v. State, 553 S.W.2d 616 (Tenn. Crim. App. 1977) (determining that in order to justify reversal on the basis of improper argument and remarks of counsel in absence of objection, it must affirmatively appear that the improper conduct affected the verdict to the prejudice of the defendant). After a thorough review of the record in this case, we conclude that the plain error doctrine cannot afford the Defendant relief. This issue is, therefore, waived.

The Defendant also objects to the following statement by the prosecutor made in closing argument:

> Now, as a Juror, you have to go back and deliberate. You are a citizen of this county. You have to decide did the State prove its case beyond a reasonable doubt? I suggest to you that we did. You also have to decide is this something that we are going to just overlook, the manufacturing of methamphetamine and the problem that it creates? I suggest to you don't do that.

We note that the Defendant has not waived this issue because this statement was objected to at trial and raised in the Defendant's motion for a new trial. The Tennessee Supreme Court "has long recognized that closing arguments are a valuable privilege that should not be unduly restricted." Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001) (citing State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978)); State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). "Consequently, attorneys are given greater leeway in arguing their positions before the jury, and the trial court has significant discretion in controlling these arguments, to be reversed only upon a showing of an abuse of that discretion." Terry, 46 S.W.3d at 156 (citing Sutton, 562 S.W.2d at 823); see Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975); Goltz, 111 S.W.3d at 5. This Court has explained that "[closing] arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." Goltz, 111 S.W.3d at 5 (citing Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995)).

When an appellate court finds an argument to be improper, "the established test for determining whether there is reversible error is whether the conduct was so improper or the argument so inflammatory that it affected the verdict to the Appellant's detriment." Goltz, 111 S.W.3d at 5 (citing Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965)). In measuring the prejudicial impact of an improper argument, this Court should consider the following factors: "(1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case." Goltz, 111 S.W.3d at 5-6 (citing Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); see State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984).

In Goltz, this Court found that within the closing argument, five general areas of prosecutorial misconduct are recognized:

> 1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
> 2. It is unprofessional conduct for the prosecutor to express his [or her] personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. See State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); Lackey v. State, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); TENN. CODE OF PROF'L RESPONSIBILITY DR 7-106(c)(4).
> 3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. See Cauthern, 967 S.W.2d at 737; State v. Stephenson, 878 S.W.2d 530, 541 (Tenn. 1994).
> 4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. See Cauthern, 967 S.W.2d at 737; State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1994).

5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

Goltz, 111 S.W.3d at 6 (quoting STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION §§ 5.8-5.9 Commentary (ABA Project on Standards for Criminal Justice, Approved Draft 1971)).

We conclude that the reference to the general problem of the manufacture of methamphetamine does not warrant reversal. The trial court stated, when the Defendant objected, that the jury understood that its function was only to determine the guilt or innocence of the Defendant. There is no indication that the jury was unduly swayed from its duties as explained in the jury instructions. Further, we cannot say that the State's conduct was so improper or the argument so inflammatory that it affected the verdict. We conclude, therefore, that this issue is without merit.

### D. Constitutionality of Facilitation Statute

The Defendant contends that Tennessee Code Annotated section 39-11-403 is unconstitutionally vague. The State counters that the Defendant has waived this issue. After thoroughly reviewing the record, we conclude that this issue has been waived because the Defendant failed to include this issue in his motion for new trial. Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived"); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"); see State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). Accordingly, this issue is waived.

### III. Conclusion

We note that the judgment form pertaining to the conviction in count one appears to contain three clerical errors. We, therefore, remand for the entry by the trial court of an amended judgment in count one, reflecting the following: the indicted charge should be for manufacture of one hundred grams or more of a substance containing methamphetamine, a class B felony, and the charge for which the Defendant was convicted is, therefore, a class C felony. In accordance with the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE